**ALFRED AND RUTH BLUMROSEN, Plaintiffs**

**v.**

**GABRIEL ST. SURIN, in his official capacity, THE DEPARTMENT OF PLANNING AND NATURAL RESOURCES GENEVIEVE MARSH, WILMA MONSANTO, ELVIS MARSH, and FLORINE FFLHULER, Defendants**

Civ. No. 189/1994

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 29, 1995

ALLAN D. SMITH, ESQ., (Hodge & Francois), St. Thomas, U.S.V.I., *for Plaintiffs*

HENRY THOMAS, ESQ., (Assistant Attorney General), St. Thomas, V.I., *for Defendant Government of the Virgin Islands*

VERA JEAN, ESQ., (Law Office of Lemuel Callwood), St. Thomas, U.S.V.I., *for Defendants Marsh, Monsanto and Flhuler*

DIASE, *Judge*

## MEMORANDUM OPINION

The Court is asked to determine a novel issue for the Virgin Islands — that of whether an adverse possessor of real property may maintain a cause of action for trespass against the owners of record and others, for acts which allegedly occurred prior to the Court's quieting of title. The Court concludes that, once superior legal title has vested in the adverse possessor by virtue of his compliance with the requirements of the Virgin Islands adverse possession statute, V.I. Code Ann. tit. 28, § 11 (1975), such adverse possessor can maintain an action for trespass against the record owners and any others who allegedly enter onto the adversely possessed property without consent, prior to the Court's quieting of title by adverse possession. The Court must also determine whether to grant the Plaintiffs, who are claimants under the Virgin Islands Tort Claims Act, V.I. Code Ann. tit. 33, §§ 3401-3416 (1994), leave to amend their Complaint and whether the Complaint should be deemed a claim or a notice of intention to file a claim under the Act. Since the Plaintiffs have substantially complied with the administrative prerequisites of the Act for the filing of a notice of intention, the Court will permit the Plaintiffs to amend their

4

Complaint to add a verification and will deem same to be a notice of intention to file a claim. The Court, however, will dismiss the Complaint, without prejudice, as to Defendants Gabriel St. Surin and the Department of Planning and Natural Resources since a claim has not been filed.

## I. Factual Background

On February 28, 1994, the Plaintiffs Alfred and Ruth Blumrosen ("Blumrosens") filed the instant action to quiet title, for injunctive and declaratory relief, and for damages against Gabriel St. Surin ("St. Surin"), the Department of Planning and Natural Resources ("DPNR"), Genevieve Marsh, Wilma Monsanto, Elvis Marsh and Florine Flhuler. The Blumrosens' claims against the Marshs, Monsanto and Flhuler center on their adverse possession of approximately 1,042 square feet of land which abuts Parcel No. 6-1-6 state Carolina, St. John, and they seek damages for trespass. The Blumrosens assert that they have been in continuous, uninterrupted, exclusive, actual, physical, notorious and adverse use and occupation of the land since 1971, when they purchased Parcel No. 6-1-6, as they had constructed and used a driveway; planted trees, lowering plants, and other vegetation on it; and continually occupied it.

According to the Blumrosens, in early February, 1994, the Defendant Genevieve Marsh received permission from St. Surin, then the Director of Permits for DPNR, to "upgrade" a road that borders the disputed land. Then, on February 26, 1994, the Marshs, Monsanto, and Flhuler caused earth, concrete and other material to be removed from the surface of this road, and, in the process, destroyed the Blumrosens' driveway, trees and plants and obstructed the Blumrosens' access to their property.

In regard to the Blumrosens' Complaint against St. Surin and DPNR, they assert that St. Surin wrongfully waived the requirements of the Coastal Zone Management Act, V.I. Code Ann. tit. 12, §§ 901-914 (1982 & Supp. 1994), and granted Defendant Genevieve Marsh permission to have the roadway "upgraded" without a permit. They allege that St. Surin's actions were negligent and violated the requirements of the Act as the proposed development was within the first tier of the coastal zone. The Blumrosens seek

5

declaratory and equitable relief restraining the Defendants from further violating 12 V.I.C. § 910(a) in regard to development in the first tier of the coastal zone. They also seek compensatory and punitive damages against all the Defendants.

On March 1, 1994, the Court entered a temporary restraining order. Then, on March 15, 1994, after a hearing, the Court entered a preliminary injunction prohibiting the Defendants from taking any further action in regard to the road and the disputed land. The Court subsequently scheduled the matter for trial on August 22, 1994.

At a pretrial conference held on August 19, 1994, the Government orally moved to dismiss the Complaint due to the Blumrosens' failure to comply with the Virgin Islands Tort Claims Act. Counsel for the Blumrosens then requested that they be granted permission to amend the Complaint to cure the jurisdictional deficiencies. The Court directed those parties to file their appropriate motions in writing, before the trial scheduled on August 22. Just prior to the trial, the Government filed its Motion to Dismiss For Plaintiff's (sic) Failure to Comply with the Virgin Islands Tort Claims Act; and the Blumrosens filed a Motion for Leave to Amend Complaint, Deem Complaint a Claim under 33 V.I.C. § 3410, and to Supplement the Complaint with Verification, along with a proposed "Amended Verified Complaint".

At the trial on August 22, the Court proceeded with the issue of adverse possession only. After reviewing the evidence presented, the Court entered findings of fact on the record. Amongst its findings was that the Blumrosens had satisfied, through clear and convincing evidence, all the statutory requirements of 28 V.I.C. § 11, as they had been in continuous, uninterrupted, exclusive, actual, physical, notorious and adverse possession of the disputed land since 1971. The Court further concluded that title in the land had vested in the Blumrosens via adverse possession.

After the conclusion of the trial, the Court requested the parties to brief the issue of the viability of the Blumrosens' claim for trespass, since the Court had just quieted title via adverse possession. To date, only the Blumrosens have filed any memorandum on that issue.

On September 12, 1994, the Blumrosens filed a Motion to Deem Complaint a Notice of Intention to File Claim under 33 V.I.C. § 3410 and a proposed "Second Amended Verified Complaint".

## II. Legal Discussion

### A. The Essence of a Trespass Claim

Trespass to real property is the injury to the right of possession. 75 Am. Jur. 2d *Trespass* § 25 (1986). Thus, an action in trespass is not a challenge to title but the violation of possession. *Id.* § 3.

■ A prerequisite for maintaining an action for trespass is that the plaintiff be in possession, either actual or constructive, of the real property in question when the alleged injury occurred. Id. § 37.[1] The decision in *Bastian v. Tranberg*, 3 V.I. 124 (D.V.I. 1955) illustrates the right of an occupier based on his actual possession of land. In *Bastian*, the court found that the defendant was liable to the plaintiff in trespass for damages caused to the plaintiff's crops by the defendant's trespassing cattle. Prior to the entry of the judgment, the defendant raised the question of whether he (defendant) could be held liable in damages to the plaintiff if the land cultivated by the plaintiff were the property of the defendant. *Id.* at 125. The court specifically held as follows:

> No issue was raised respecting actual possession by plaintiff of the land on which the crops grow, and the gist of an action in trespass is injury to possession. It, therefore, appears both unnecessary and improper for the Court in this action to go behind the admitted fact of established, peaceable possession by plaintiff.

*Id.* at 126.

■ By definition, an adverse possessor of land is one who has actual possession. 3 Am. Jur. 2d *Adverse Possession* § 2 (1986). The Virgin Islands adverse possession statute requires actual possession, as it provides that the uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real prop-

---

[1] Legal title must only be proven when it is being relied upon to establish constructive possession. *Nixon v. Williamson*, 741 S.W.2d 745, 746 (No. Ct. App. 1987).

7

erty for fifteen years or more will be conclusively presumed to give title to the subject land, except as against the Government. 28 V.I.C. § 11. To prove his actual possession, the adverse possessor must perform acts of ownership or dominion calculated to notify the public that the occupier is exercising a claim of exclusive control of the land. Restatement (Second) of Torts § 157 cmt. a (1965).

### B. Superior Right of an Adverse Possessor

■ The Virgin Islands courts, along with general American jurisprudence, have long favored the protection of one's interest in and rights to real property ownership. Therefore, to balance the harsh consequences of the Virgin Islands adverse possession statute faced by the record owner, the statutory requirements, especially those providing that possession be open and notorious, are specifically calculated to give the record owner notice that someone else is claiming title to the property. *McNamara v. Christian*, 26 V.I. 109, 111 (Terr. Ct. 1991). "The disseisor 'must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest.'" *Cake Box Bakery v. Maduro*, 15 V.I. 283, 288-289 (Terr. Ct. 1978) (citing *Marvel v. Barley Mill Road Homes*, 34 Del. Ch. 417, 104 A.2d 908 (1954)). Where the occupier has not acted to give effective notice of his occupation, the court will not bar the record owner from seeking recovery of the property. *McNamara*, 26 V.I. at 114-115.

However, it is also generally thought that the title recordholder is in the best position to know what he owns and to protect the same from trespassers or intruders. Thus, the protection offered the record owner by the adverse possession statute is not unqualified or unlimited. "The owner is . . . chargeable with knowledge of what is openly done on his land and therefore calculated to attract attention." 26 V.I. at 111-112. As a result, our adverse possession statute mandates that a record owner who has slept on his legal rights will lose his title.

■ An adverse possessor who has complied with the statutory requirements becomes vested with legal title in fee simple with its attached remedies. 3 Am. Jur. 2d, *supra*, § 298. The title of the record owner is, therefore, divested. The wording of our statute

further supports this conclusion. It distinctly provides that the possession for fifteen or more years "shall be conclusively presumed to give title thereto . . . ." 28 V.I.C. § 11. Consequently, the adverse possessor acquires the superior title to the real property. 3 Am. Jur. 2d, *supra*, § 297. Once title has vested by adverse possession, it can only be divested by conveyance or by a subsequent adverse possession. 3 Am. Jur. 2d, *supra*, § 298. The limited or nonuse of the property by an adverse possessor whose title has already matured will not divest him of title. *Id.; Emanuel v. A Section of Parcel 119 and 121 Estate Smith Bay*, 21 V.I. 92, 96 (D.V.I. 1984).

In regard to the direct issue at hand, courts have long held that an adverse possessor who has met the statutory requirements becomes vested with legal title and the record owner becomes divested, thus enabling the adverse possessor to maintain a cause of action for trespass against any and everyone. In *Ross v. McNeal*, 618 S.W.2d 224 (Mo. Ct. App. 1981), the Missouri Court of Appeals upheld the trial court's ruling that the record owner was liable for damages for trespass for removing various improvements from real property where title had vested in the adverse possessors before the record owner damaged the property. The Court held that "'as to the land, adverse possession for the statutory period establishes an indefeasible legal title in the possessor, the title of the record owner is divested . . . .'" *Id.* at 228 (quoting *LaGrange Reorganized School District No. R-VI v. Smith*, 312 S.W.2d 135 (Mo. 1958)). This was also the rationale of the Louisiana Appellate Court in *McIlwain v. Manville Forest Products Corporation*, 499 So. 2d 1138 (La. Ct. App. 1986), where the defendant argued that, as record owner of the disputed property, it could not be held liable for damages for trespass and for cutting of timber. The Court succinctly stated that, since the plaintiffs owned the property by adverse possession, the defendants were liable. *Id.* at 1143.

Conversely, in *McGowan v. Hodge*, 27 V.I. 66, 71 (Terr. Ct. 1992), the Court found that the defendants had not fulfilled the criteria of 28 V.I.C. § 11 and, therefore, did not adversely possess the property in controversy and could not maintain an action for trespass against the plaintiffs, the record owners, as asserted in their counterclaim, as they had "not proved . . . that the Plaintiffs

9

trespassed on any lands *owned* by the Defendants." (emphasis added). The *McGowan* court did find, however, that the defendants were liable to the plaintiffs for damages in trespass. *Id.*

■ As stated previously, at the trial on August 22, the Court found that the Blumrosens had occupied the disputed real property since 1971 and had met the statutory requirements for adverse possession. Therefore, as title in an adverse possessor vests at the statutory period of fifteen years, as of 1986, the Blumrosens held title in fee simple to the 1,042 square feet on which they had constructed and used a driveway, planted trees and other vegetation and otherwise performed continuous and open acts of possession. When the Defendants Marshs, Monsanto, and Flhuler, the record title owners and others, allegedly entered the disputed property in early February, 1994, without the Blumrosens' consent, they can be deemed to have invaded as no one any longer held title superior to the Blumrosens'. This determination seems particularly just in that, when these Defendants allegedly entered the property, the type of the improvements made by the Blumrosens should have put them on immediate notice that someone was occupying the land and that they should ascertain the extent, nature and legal basis for such occupation. Therefore, as the Blumrosens had superior title and were the owners by adverse possession to the disputed property, they can sustain an action for trespass against the record owners and others who entered after the statutory period.

## C. Compliance With the Tort Claims Act

Pursuant to the Virgin Islands Tort Claims Act, the Government of the Virgin Islands waived its immunity from liability with respect to any injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government, while acting within the scope of his/her office or employment, but waiver is contingent upon the claimant complying fully with the provisions of the Act. 33 V.I.C. § 3408(a). Section 3409(c) of the Act requires a claimant to file, within ninety days after the accrual of the claim, a claim to recover damages for injuries to property; however, if the claimant has filed a written notice of intention to file a claim within that time, the

10

claimant is permitted to file the claim within two years after the accrual of the claim.

Section 3410 further sets forth the content requirements of the claim and notice of intention. Specifically, it provides that the claim must contain the following: a statement of the time when and the place where the claim arose; the nature of the claim; the items of damage or injuries claimed to have been sustained, with the total sum claimed; and a verification. It further provides, though, that the notice of intention does not need to contain the item of damage or injuries and the sum claimed. Section 3410 additionally requires that the claim or notice of intention shall be filed in the Office of the Governor and a copy served on the Attorney General.

The Blumrosens concede that their Complaint does not contain the total sum of damages sought and the verification.[2] Moreover, they never filed a notice of intention to file a claim or a claim as required by the Act, prior to filing the Complaint with the Court. Based on the affidavits of service submitted by the Blumrosens in support of their motions, it is evident, nevertheless, that they served both the Office of the Governor and the Office of the Virgin Islands Attorney General with a copy of the Complaint on March 10, 1994.

The Blumrosens ask the Court initially to allow them to amend their Complaint, in pertinent part, to add a verification and additional allegations of negligence against St. Surin and the Government. They also ask the Court to deem the Complaint a claim under the Virgin Islands Tort Claims Act. They lastly ask the Court to deem the Complaint a notice of intention to file a claim; and to allow them to further amend their Complaint. They served the document entitled "Second Amended Verified Complaint" on the Office of the Governor and the Attorney General. Importantly, neither of the proposed amended complaints contain a sum certain for damages.

■ In *Albert v. Abramson's Enterprises, Inc.*, 790 F.2d 380 (3d Cir. 1986), the Third Circuit Court of Appeals addressed a similar issue — that of whether a timely filed complaint could be deemed a

---

[2] The Blumrosens make this concession in their Memorandum of Law dated August 22, 1994.

claim under the Virgin Islands Tort Claims Act. Importantly, the Third Circuit Court analyzed the plaintiffs' complaint in detail to determine if all the necessary substantive requirements of the Act were included in the complaint. After making the analysis, the Court found that every requirement had been met and, thus, held that the complaint sufficed as a claim under the Act.

Here, with the two deficiencies noted — that of the failure to have a verification and to state the sum claimed — this Court must determine whether to allow the amendment of the Complaint. Clearly, since neither the Complaint nor the proposed amended complaints contain a sum claimed as damages, the Court cannot hold that the Complaint can be amended with simply a verification and deem same as a claim under the Act.

In *Henry v. Government of the Virgin Islands*, 10 V.I. 227 (D.V.I. 1973), and *McBean v. Government*, 19 V.I. 383, 386 (Terr. Ct. 1983), the District Court and the Territorial Court, respectively, allowed the claimant to amend the complaint to add a verification. This Court believes that such an approach is preferred here. With the amendment, the Complaint then meets the requirements of Section 3410 for the notice of intention to file a claim. It, though, does not satisfy the statutory requirements of a claim.

It must be emphasized that the Tort Claims Act was adopted almost twenty-four years ago, and thus, is not unfamiliar to the Virgin Islands Bar. Moreover, there have been numerous judicial opinions issued regarding its requirements. In order for a claimant's complaint to survive jurisdictional attack, these requirements must be met.

## III. Conclusion

The Court, therefore, concludes that, where superior legal title has vested in an adverse possessor through his compliance with 28 V.I.C. § 11 at the time when an alleged trespass occurs but before the court's quieting of title, the adverse possessor can maintain an action for trespass against all who allegedly enter onto the adversely possessed property without his consent. Therefore, the Blumrosens can maintain an action for damages in trespass against the Defendants for the alleged trespass to the 1,042 square feet of land which abuts Parcel No. 6-1-6 Estate Carolina, St. John.

Furthermore, the Court will grant certain portions of the Plaintiffs' pending motions and deny others. It will grant the Blumrosens' Motions to Deem Complaint a Notice of Intention to File a Claim; and to Amend; and to Supplement the Complaint with Verification. It will deem that the document entitled "Second Amended Verified Complaint" is the Amended Complaint and the notice of intention to file a claim. The Court will further deny the Blumrosens' Motion to Deem Complaint a Claim under Section 3410 and dismiss the allegations in the Amended Complaint against Gabriel St. Surin and the Department of Planning and Natural Resources without prejudice. An appropriate Order will be entered.

DATED this 29th day of September, 1995.